FILED
04 MAY 21 PM 12:04
JAMES...
CLERK

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

FILED
MAY 2 0 2004
LEONARD GREEN, Clerk

No. 03-3080

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 01-355

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.
This notice is to be prominently displayed if this decision is reproduced.

DEBRA SUE VITT,

   Plaintiff-Appellant,

v.

CITY OF CINCINNATI,

   Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
SOUTHERN DISTRICT OF
OHIO

**BEFORE:**   **BATCHELDER and GIBBONS, Circuit Judges; and COHN, District Judge.**[*]

**AVERN COHN, District Judge.** This is a case under Title VII, 42 U.S.C. § 2000e-2 (a) claiming reverse race discrimination. Plaintiff-appellant Debra Sue Vitt ("Vitt") appeals from the district court's grant of summary judgment to defendant-appellee, the City of Cincinnati ("the City"). At issue is whether the district court erred in dismissing Vitt's discrimination claim based on a hostile work environment and disparate treatment. Finding no error, we affirm.

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

I.

A.

Vitt, a Caucasian, has been employed as an administrative technician by the City since 1990. From mid-1998 through 2000, she worked in the City Manager's Department under the supervision of Fannie Nicholes ("Nicholes"). She says that she was discriminated against by Nicholes and a co-worker, Gina Ruffin Moore ("Moore"), who are both African-American.

Specifically, Vitt says that on the second day of being supervised by Nicholes, Nicholes made a comment about Vitt's attire, indicating it was inappropriate around men. She further says that Nicholes subjected her to "brow-beating" meetings in her office and that other African American employees, particularly Moore and Shirey Dunham, were not subjected to such meetings. Vitt says that Nicholes refused to allow her to attend a seminar or provide requested office supplies. She also says that Vitt did not honor her requests for computer training, but allowed Moore and Dunham to have such training. Vitt further says that she was not given enough time to complete work assignments and that Nicholes treated her in a generally rude and demeaning manner, including instructing her not to speak to certain high level City employees.

As to Moore, Vitt says that Moore also treated her in a rude and condescending manner. She says that Moore made a comment to the effect that Caucasian women do not

2

like African-American women. Moore also gave Vitt a book about slavery and made remarks about slavery, although Vitt could not identify any remarks as offensive.

Vitt says that when she complained about Moore's treatment to Nicholes, Moore stated that perhaps Vitt resented the fact that two African-American woman were telling her what to do. Nicholes apparently responded that "all white people are prejudiced, it's just subconscious with some."

Vitt also says that Moore or Dunham were periodically required to take Vitt's post during her lunch but that they sometimes refused to show up, causing Vitt to miss lunch. When she reported this to Nicholes, Nicholes did not take any action.

Vitt further says that she was accused by Nicholes and John Shirey, the City Manager, of scheduling breakfast meetings for Shirey with "malcontents and troublemakers."

On an October 21, 1999 job evaluation, the only one completed by Nicholes, Vitt says that Nicholes made untrue statements regarding Vitt's compliance with sick and leave time which resulted in her receiving a lower rating than she deserved.[1]

In early October 1999, Vitt complained to Shirey, who first told her he did not have time to address her complaints.[2] However, Vitt admits that shortly thereafter Shirey met with her on four separate occasions. In November or early December, during one such meeting,

---

[1] Vitt received an overall score of 85 - in the high normal range.

[2] Vitt apparently sent Shirey several e-mails while he was away from the office for several days. Upon his return, Vitt confronted Shirey when he passed by her desk at which time Shirey stated he did not have time for her. The City concedes that Shirey may have acted "short" with Vitt.

3

Shirey allegedly stated that "Debra I know reverse discrimination occurs, but unfortunately their side is the only one that gets heard." Shirey also met with Nicholes. Shirey then issued a memorandum to all City employees stressing the City's policy against discrimination. He also issued Ordinance No. 053-2000 - Diverse and Respectful Workplace, which emphasized that all employees must treat their fellow employees with respect and that anyone who violates the City's harassment policies would be disciplined.

Vitt, however, continued to believe she was being treated unfairly and on April 24, 2000, filed a charge of discrimination with the City's Equal Employment Office. Before the City could complete its investigation, Vitt filed a federal charge of discrimination with the EEOC on August 11, 2000.

On May 24, 2000, Vitt noticed that the words "white bitch" were scratched on her desktop. Vitt does not know who wrote the offending words and says that Nicholes was very concerned, consoled Vitt, and contacted the police.

In September 2000, Vitt was moved to another department and is no longer supervised by Nicholes.

### B.

Following the issuance of a right to sue letter by the EEOC, Vitt filed suit in federal court presenting the following claims: (1) reverse race discrimination under Title VII, (2) reserve race discrimination under state law, (3) sex discrimination under Title VII, (4) sex discrimination under state law, (5) retaliation under Title VII, (6) retaliation under state law,

4

and (7) violation of public policy under state law. Vitt later withdrew her sex discrimination and retaliation claims. The City moved for summary judgment on Vitt's federal race discrimination claim. The district court granted the motion and dismissed the case.[3] Vitt appeals.

## II.

### A.

We review an order granting summary judgment *de novo*. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B.

To establish a *prima facie* case in support of her hostile work environment claim, Vitt must show: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome racial harassment; (3) that the harassment was based on race; (4) that the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). Where the employer has

---

[3]The district court dismissed Vitt's state law claims for discrimination and violation of public policy without prejudice.

5

not taken any tangible employment action against the plaintiff, the employer may raise an affirmative defense comprising two elements: that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000).

In determining whether there was a hostile or abusive work environment, we look to the totality of the circumstances. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). We consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "Title VII is not 'a general civility code for the American workplace,'" *Burnett v. Tyco Corp.*, 203 F.3d 980, 982 (6th Cir. 2000) and "[p]ersonal conflict does not equate with discriminatory animus." *See Morris* 201 F.3d at 791. We carefully distinguish between lawful conduct--even if insensitive--and discriminatory harassment. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000). Furthermore, "'simple teasing', offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (citations omitted).

Here, the district court reviewed all of Vitt's evidence and concluded that in totality, it did not amount to a hostile work environment. We agree. While there were some comments referencing race, they were infrequent and isolated. The evidence tends to show that Nicholes was a difficult supervisor with whom Vitt clearly had an interpersonal conflict. There is no dispute that Vitt was not physically threatened or humiliated, nor is there any evidence that Vitt could not perform her job. Indeed, she received merit raises and a generally favorable performance review from Nicholes. In short, Vitt has failed to show that she was subjected to severe or pervasive racial harassment.

Moreover, even if Vitt had made such a showing, the City provided unrefuted evidence sufficient to establish its affirmative defense. Shirey issued a memorandum and an ordinance regarding workplace harassment. He met with Vitt. The City's investigation of Vitt's charge of discrimination was cut short because Vitt filed an EEOC charge. Shirey's remark that a Caucasian's discrimination claim does not get heard, while inappropriate and untrue, does not establish liability on the part of the City.

Viewing the record in its totality, we conclude that Vitt has failed to demonstrate that her hostile work environment claim should have been submitted to a trier of fact.

### C.

Where there is no direct evidence of race discrimination, a plaintiff may prove a *prima facie* case of racial discrimination by showing that she (1) is a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was treated

7

differently than similarly situated members outside the protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

In adapting the *McDonnell Douglas* test to cases of reverse discrimination, this Circuit has held that, under the first prong, a plaintiff must demonstrate "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (quoting *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981)); *see also Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 256 (6th Cir. 2002) (stating that such evidence "justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely"). To satisfy the fourth prong, a plaintiff must show that the defendant treated differently employees who were similarly situated but were not members of the protected class. *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).

If a plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. *McDonnell Douglas*, 411 U.S. at 802. If the defendant does so, then the plaintiff must establish that the articulated reason is a mere pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The burden of persuasion in a discrimination case remains at all times with the plaintiff. *Id.* at 254-56.

As to Vitt's *prima facie* case, the district court found that Vitt failed to establish "background circumstances" to show that the City was among the rare class of employers who discriminates against the majority. We agree; there is no such evidence in the record.

The district court also found that Vitt failed to show she was subjected to an adverse employment action. We again agree. Vitt identified a failure to provide her with computer training or allow her to attend seminars as adverse employment actions.

An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). *De minimis* employment actions are not actionable; the "change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.' " *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (citation omitted).

As the district court aptly explained:

> The Court finds unclear how PowerPoint training would be necessary for Plaintiff's unique position when her primary duties involved answering phone calls and staffing the main desk at City Hall. Such decisions to deny or grant training or to permit attendance at seminars clearly fall within the realm of the employer's business judgment. Plaintiff was free to seek any desired training in her free time at her own expense; her employer was not required to provide it.
> ... Plaintiff has not shown evidence of demotion, decreased wage or salary, or diminished material responsibilities. The facts indicate the inverse: Plaintiff continued to receive raises and step-up pay for meeting expectation. Plaintiff sought to become a classified employee and was granted such status.

On appeal, Vitt argues that her performance review by Nicholes, which she says contains untrue statements, constitutes an adverse employment action. This argument lacks

merit. First, Vitt's overall evaluation was in the high average range and she later received a merit raise. She admitted to receiving both higher and lower performance reviews in the past. She also continued to receive raises. While her performance review may not have been as favorable as she desired, it does not amount to an adverse employment action. *See Hollins*, 188 F.3d at 662.

We also agree with the district court's conclusion that Vitt failed to show that a similarly situated person outside her class received different treatment. Although Vitt, Moore, and Dunham were, according to Vitt, under the administrative technician classifications and supervised by Nicholes, Vitt admitted that their job duties were different. Thus, they were not similarly situated.

### III.

For the reasons stated above, the decision of the district court is AFFIRMED.